UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| SANDY C.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cv-00268-JMS-DML |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In January 2015, Sandy C. protectively filed for supplemental security income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of December 29, 2014. [Filing No. 9-5 at 1-9.] Her application was denied initially on March 18, 2015 and upon reconsideration on June 2, 2015. [Filing No. 9-4 at 6-9; Filing No. 9-4 at 15-21.] A hearing was held before Administrative Law Judge Aubri Masterson on March 15, 2017. [Filing No. 9-2 at 45-79.] She issued a decision on May 17, 2017, concluding that Sandy C. was not entitled to benefits. [Filing No. 9-2 at 19-37.] The Appeals Council denied review on April 17, 2018. [Filing No. 9-2 at 2-4.]

Sandy C. filed a civil action on May 22, 2018, which was remanded by agreement of the parties on November 14, 2018. [*See* Filing No. 1 and Filing No. 22 in *Sandy C. v. Berryhill*, Case No. 4:18-cv-00089-TWP-DML.] On remand, ALJ Robert Flynn ("the ALJ") held a hearing on August 1, 2019. [Filing No. 9-16 at 36-79.] On October 8, 2019, the ALJ issued a decision

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

concluding that Sandy C. has been disabled since her 55th birthday in 2019, but was not disabled before then. [Filing No. 9-15 at 7-25.] On December 12, 2019, Sandy C. timely filed this civil action asking the Court to review the denial of benefits prior to her 55th birthday, according to 42 U.S.C. § 1383(c)(3). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2]

"If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the [Commissioner] to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). However, courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings, and this power includes the ability to remand the case with instructions for the Commissioner to calculate and award benefits to the applicant. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement

---

[2] The Code of Federal Regulations contains separate sections relating to disability insurance benefits ("DIB") and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

3

determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

## II.
### BACKGROUND

Sandy C. was 50 years of age on her alleged onset date. [*See* Filing No. 9-5 at 2.] She has a ninth-grade education and previously worked as a janitor. [Filing No. 9-2 at 51.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded Sandy C. was not disabled prior to March 6, 2019, but became disabled as of that date. [Filing No. 9-15 at 7-25.] Specifically, the ALJ found as follows:

- At Step One, Sandy C. had not engaged in substantial gainful activity[4] since January 22, 2015, the date she applied for benefits. [Filing No. 9-2 at 21.]

- At Step Two, Sandy C. has had the following severe impairments since January 22, 2015: "degenerative disc disease of the thoracic and lumbar-sacral spine; thoracic and lumbar-sacral neuritis; sciatica; cervical, thoracic and lumbar spine segmental dysfunction; osteoarthritis of the bilateral knees; complex regional pain syndrome/regional pain syndrome of the right upper extremity; chronic pain syndrome; fibromyalgia; myofascial pain syndrome; myalgia/myositis; fibromyositis; left foot calcaneal exostosis-status post excision; bilateral plantar fasciitis; left Achilles tendonitis; gout; obesity; diabetes mellitus; hypothyroidism; hypertension; hyperlipidemia; angina; diverticulosis; Crohn's disease; hiatal hernia; gastroesophageal reflux disease; obstructive sleep apnea; insomnia; migraine; endometrial disorder; ovarian cys[t]; major depressive disorder; bipolar disorder; generalized anxiety disorder; panic disorder; and post-traumatic stress disorder." [Filing No. 9-15 at 11-12.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-15 at 12-15.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- After Step Three but before Step Four, Sandy C. had the RFC "to perform a range of light work as defined in 20 CFR 416.967(b), with the following limitations: she can occasionally lift up to 20 pounds, frequently lift or carry up to 10 pounds, stand/walk for approximately 6 hours per 8-hour workday, sit for approximately 6 hours per 8-hour workday, with a 15-minute break every 2 hours and a 30-minute lunch break.  The claimant can occasionally push/pull within the above-weight restrictions and occasionally operate foot controls.  In addition, she cannot climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs.  She cannot balance on narrow, slippery, or moving surfaces or terrain.  She can occasionally stoop and crouch, but cannot kneel or crawl.  With respect to her right upper extremity, she can only occasionally reach overhead, and frequently reach in other directions.  Similarly, with…respect to her right upper extremity, she can only frequently handle, finger and feel objects.  Further, the claimant must avoid concentrated exposure to extreme cold, wetness, dampness, or humidity.  She must avoid all exposure to hazards, such as unprotected heights, the use of moving machinery, machinery with moving parts, or commercial driving.  She cannot work outdoors, and is limited to work environments that would not expose her to more than a moderate level of noise, such as typically found in a business office, department store or light traffic.  Moreover, the claimant is limited to work that involves simple, routine and repetitive tasks; performed in a low stress environment, defined as free of fast-paced production requirements, involves only simple work-related decisions, few – if any – workplace changes, no interaction with the general public, and no more than occasional and superficial (no tandem tasks or team work) interaction with co-workers and supervisors." [Filing No. 9-15 at 15-23.]

- At Step Four, Sandy C. was unable to perform any past relevant work since December 29, 2014, her alleged onset date.  [Filing No. 9-15 at 23.]

- At Step Five, considering Sandy C.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Sandy C. could have performed prior to March 6, 2019, including merchandise marker, mail sorter, and router.  [Filing No. 9-15 at 24.]  The ALJ also concluded that Sandy C.'s age category changed on March 6, 2019 (the day before her 55th birthday), and that, considering her age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Sandy C. could perform after March 6, 2019.  [Filing No. 9-15 at 24-25.]

## III.
### DISCUSSION

Sandy C. requests that the Court reverse the denial of her claim for benefits for the period from her application date (January 22, 2015) to her 55th birthday (March 7, 2019) because the ALJ erred on remand by: (1) not accounting for the consultative psychologist's finding that Sandy C. "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties" in the RFC or in the hypothetical questions to the vocational expert ("VE"); and (2) not fully accounting for the finding that Sandy C. has moderate difficulties with concentration, persistence, or pace in the RFC or in the hypothetical questions to the VE. [Filing No. 11 at 16-30.] The Court addresses each argument in turn.

### A. Failure to Account for the Consultative Psychologist's Finding

Sandy C. argues that Dr. Dawn Doup found that Sandy C. "should not have difficulty being able to learn, remember, and comprehend simple instructions," but also found that she "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties." [Filing No. 11 at 17-18.] Sandy C. points out that the ALJ also noted that Dr. Doup's opinion was "somewhat vague, but appears generally based on and consistent with signs and findings on evaluation as well as the record as a whole, including [Sandy C.'s] own reports of functioning." [Filing No. 11 at 18.] Sandy C. argues that the ALJ's statement that Dr. Doup's opinion was "accommodated by the mental limitations in the…RFC, including simple, routine, repetitive tasks…" is not accurate. [Filing No. 11 at 18.] She contends that limiting her to "simple, routine and repetitive tasks; performed in a low stress environment, defined as free of fast-paced production requirements, involv[ing] only simple work-related decisions, few – if any – workplace changes" did not account for Dr. Doup's opinion because: (1) "it is not evident how those additional comments solve [her] difficulties with concentrating on, attending to, and completing even simple

tasks"; (2) the ALJ did not explain how the RFC might address those limitations; and (3) "any explanation that the Commissioner might offer in his brief will be improper *post hoc* reasoning and cannot be considered by the Court." [Filing No. 11 at 19-20.] Finally, Sandy C. points to an exchange during her hearing with the ALJ, in which the VE testified that if Sandy C. were only able to complete simple tasks 80% of the time, there would not be any jobs available to her. [Filing No. 11 at 20-21.] She states that, on remand, "the ALJ will need to determine how much trouble [she] has doing those things, and then include that determination in the RFC assessment and the hypothetical questions to the VE." [Filing No. 11 at 20-21.]

The Commissioner argues that the ALJ "reasonably gave the most probative weight to…Dr. Doup," and that "Dr. Doup's limits were substantially accommodated by the ALJ's mental residual functional capacity limits." [Filing No. 12 at 8.] The Commissioner points to Dr. Doup's finding that Sandy C. "should not have difficulty being able to learn, remember, and comprehend simple instructions." [Filing No. 12 at 9.] As for Dr. Doup's finding that Sandy C. "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties," the Commissioner argues that the ALJ considered "additional records that showed intact concentration," and that the limits in the RFC "for a low stress work environment, free of fast-paced production requirements, involving only simple work-related decisions, and few if any workplace changes," adequately accommodated Sandy C. [Filing No. 12 at 9.] The Commissioner contends that Dr. Doup's findings were vague, that the ALJ "reasonably looked to the examination findings and opinions as a whole, as well as other record evidence, when assessing [Sandy C.'s] mental functional capacity," and that Sandy C. "has not identified any specific, supported limits on mental functioning that were unreasonably omitted from the ALJ's decision." [Filing No. 12 at 9-10.]

7

In her reply, Sandy C. argues that while the ALJ did not need to include Dr. Doup's findings verbatim in the RFC, he was required to include them to some extent. [Filing No. 13 at 4.] She reiterates her argument that the ALJ should have included in the RFC and the hypothetical questions to the VE that Sandy C. may have trouble attending to, concentrating on, and completing even simple tasks. [Filing No. 13 at 5.] Finally, she argues that the Commissioner contends that the ALJ did not err on this issue, but there is no dispute that if the ALJ did err, the error was material. [Filing No. 13 at 5.]

The parties do not dispute that the ALJ gave great weight to Dr. Doup's findings. Accordingly, the ALJ was required to include the limitations that Dr. Doup identified in the questions to the VE and in Sandy C.'s RFC. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record…. This includes any deficiencies the claimant may have in concentration, persistence, or pace") (citations omitted); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical"); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("If the ALJ relies on testimony from a [VE], the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record").

Specifically, "[a]mong the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Here, the ALJ included only the limitations set forth in the RFC in his hypothetical questions to the VE – he did not include Dr. Doup's finding that Sandy C. "may have difficulty attending,

8

concentrating, and completing simple tasks due to depressive and anxious difficulties." [Filing No. 9-16 at 69-71.] When Sandy C.'s counsel asked the VE whether adding to the ALJ's hypothetical questions the limitation that the individual "may have difficulty completing even simple tasks" would mean that the individual could "sustain any type of full-time, competitive work," the ALJ asked for clarification. [Filing No. 9-16 at 75.] The following exchange took place:

> ALJ: What do you mean by difficulty completing simple tasks?
>
> ATTY: I guess that sometimes they're going to get completed on a timely manner and sometimes they won't be. Is that specific enough?
>
> VE: No. You have to define sometimes, quantify it for me if you could.
>
> BY THE ATTORNEY:
>
> Q: Let's say that 80 percent of the time, they're able to complete simple tasks, but 20 percent of the time, they're not.
>
> A: Then, that would be work preclusive in unskilled work.
>
> Q: Is there a cutoff number there as far as you're concerned?
>
> A: Again, not being able to complete a task what's the reason for that? They would be off task, so the 15 percent threshold.

[Filing No. 9-16 at 75.] The ALJ did not seek to clarify this further, and the VE's answers indicate that there is a level at which an individual who may have difficulty completing even simple tasks could not work. [Filing No. 9-16 at 75 (VE acknowledging that if an individual could not complete simple tasks 80% of the time, they would not be able to perform the type of work outlined in the ALJ's hypothetical questions and the RFC).]

The ALJ did not include Dr. Doup's findings in his hypothetical questions to the VE, and the VE's answers to Sandy C.'s counsel's questions indicate that including that finding may have

9

affected the VE's conclusions and, ultimately, the ALJ's determinations regarding Sandy C.'s RFC and her ability to work.

The Court next considers whether the ALJ erred in failing to include Dr. Doup's findings in the RFC. The RFC limits Sandy C. to "work that involves simple, routine and repetitive tasks; performed in a low stress environment, defined as free of fast-paced production requirements, involv[ing] only simple work-related decisions, few – if any – workplace changes, no interaction with the general public, and no more than occasional and superficial (no tandem tasks or team work) interaction with co-workers and supervisors." [Filing No. 9-15 at 15.] But Seventh Circuit guidance indicates that this limitation does not account for Dr. Doup's finding that Sandy C. "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties." In *Varga*, the Seventh Circuit noted that the limitation to "simple, routine, and repetitive tasks" refers to "'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days." 794 F.3d at 814 (citing 20 C.F.R. §§ 404.1568, 404.1520). It went on to state that:

> [W]hether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments – *e.g.*, with difficulties maintaining concentration, persistence, or pace – can perform such work. For this reason, we have repeatedly rejected the notion that a hypothetical like the one here "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."

*Id.* (quoting *Yurt*, 758 F.3d at 858-59).

It is true that the RFC in this case goes a step further than limiting Sandy C. to simple, routine, and repetitive tasks. It also limits her to work "in a low stress environment, defined as free of fast-paced production requirements, involv[ing] simple work-related decisions, few – if any – workplace changes, no interaction with the general public, and no more than occasional and

10

superficial…interaction with co-workers and supervisors." [Filing No. 9-15 at 15.] But these limitations are not sufficient to account for Dr. Doup's finding that Sandy C. "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties*."* *See Varga*, 794 F.3d at 814 (RFC that limited claimant to a job involving "simple, routine, or repetitive tasks in a work environment…free of fact paced production requirements, involving only simple work related decisions with few if any work place changes and no more than occasional interaction with coworkers or supervisors" did not adequately account for claimant's difficulties maintaining concentration, persistence, or pace which "were related to her diagnosed anxiety and depression, as well as her physical problems and pain").

The Court finds that the ALJ's RFC did not adequately take into account Dr. Doup's finding that Sandy C. "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties," and that the ALJ also erred by not accounting for that finding in his hypothetical questions to the VE. Accordingly, this matter must be remanded.

### B. Failure to Account for Difficulties With Concentration, Persistence, and Pace

Sandy C. also argues that after finding that she had moderate limitations in concentrating, persisting, or maintaining pace, the ALJ failed to account for those limitations in the RFC or in the hypothetical questions to the VE. [Filing No. 11 at 21.] She asserts that generally limiting her to simple, routine tasks is not sufficient, unless the VE has "independently reviewed the medical record or heard testimony directly addressing the limitations in concentration, persistence, or pace," or where the ALJ has used "alternative phrasing [which] specifically excluded those tasks that someone with the claimant's limitations [in concentration, persistence, or pace] would be unable to perform." [Filing No. 11 at 23-24 (quotation and citation omitted).] Sandy C. asserts that the limitation to "no fast-paced production" does not sufficiently account for her difficulties with concentration, persistence, or pace, and that the ALJ did not include that limitation in the

11

hypothetical questions to the VE or define what "fast-paced production" means in any event. [Filing No. 11 at 29-30.]

In his response, the Commissioner contends that Sandy C.'s argument that cases establish a "bright-line rule" indicating that her RFC is insufficient are distinguishable. [Filing No. 12 at 11.] The Commissioner argues that no bright-line rule exists, and that "the [VE's] testimony addressed a hypothetical that contained all of Plaintiff's limitations, and identified jobs that existed in the regional and national economy." [Filing No. 12 at 12.] The Commissioner then points to cases in which he contends "the Seventh Circuit has affirmed ALJ decisions that included far fewer limits in the [VE's] hypothetical question." [Filing No. 12 at 12.] He asserts that the ALJ "provided enough of an explanation to trace the path of his reasoning with regard to Plaintiff's impairments to sufficiently connect the evidence to his conclusions." [Filing No. 12 at 12.]

Sandy C. reiterates many of her arguments in her reply, and seeks to distinguish the cases relied upon by the Commissioner. [Filing No. 13 at 6-12.]

The ALJ did not include in his hypothetical questions the finding that Sandy C. has moderate difficulties with concentrating, persisting, or maintaining pace. [*See* Filing No. 9-16 at 69-71.] Instead, the ALJ's hypothetical questions limited the individual to "simple, routine and repetitive tasks performed in a low stress work environment defined as free of fast paced production requirements" and "involv[ing] only simple work-related decisions with few, if any, workplace changes." [Filing No. 9-16 at 70.]

An ALJ need not use specific language, but the hypothetical questions must "orient the [VE] to the totality of a claimant's limitations," which include difficulties with concentration, persistence, or pace. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (citing *O'Connor-Spinner*, 627 F.3d at 619). The Seventh Circuit has noted that, often, "employing terms like

12

'simple, repetitive tasks' on their own will not necessarily exclude from the [VE's] consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. And while omitting the terms "concentration, persistence, and pace" from the hypothetical questions to the VE may be harmless "when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform," *id.* at 619, that is not the case here. The limitations the ALJ included in the hypothetical questions to the VE do not account for Sandy C.'s moderate difficulties with concentration, persistence, or pace.

As for Sandy C.'s RFC, the Court acknowledges that there are situations where "generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record." *Urbanek v. Saul*, 796 Fed. App'x 910, 914 (7th Cir. 2019) (quotation and citation omitted). But this it not one of those situations. Here, there is a specific finding that Sandy C. "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties." Given this finding, limiting Sandy C. to simple tasks – even with the additional limitations relating to no production paced or quota driven work, no interaction with the general public, and a static work environment – does not adequately account for her difficulties under the circumstances presented in this case. *See Varga*, 794 F.3d at 814.

The Commissioner attempts to distinguish the cases relied upon by Sandy C., and also cites his own cases to support his argument. The Commissioner points to *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019), a case in which Sandy C.'s counsel was the claimant's counsel. There, the claimant argued that his RFC, which limited him to medium exertional work with several

13

limitations, did not account for his moderate limitations in concentration, persistence, or pace – including his less severe symptoms like fatigue, loss of energy, and difficulty with attention and concentration. *Id.* at 497. The Seventh Circuit found that the RFC was adequate because some of the claimant's symptoms were self-reported and not supported by the medical evidence, and because the evidence showed that the claimant's psychological limitations only surfaced when he was around others. *Id.* at 497-98. The Court finds *Jozefyk* distinguishable from this case. There, the conditions that the claimant sought to have accounted for in the RFC were supported by self-reports. Here, Sandy C.'s difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties is supported by Dr. Doup's findings, to which the ALJ gave great weight. Additionally, unlike in *Jozefyk*, the Commissioner has not pointed to any evidence suggesting that Sandy C.'s depressive and anxious difficulties only surface when she is around others.[5]

The Commissioner also argues that *Varga* is distinguishable because "[i]n *Varga*, the ALJ did not evaluate the Section I checkboxes of the state agency psychologist's mental [RFC] assessment and did not explain how the [RFC] assessment captured the claimant's moderate limitations." [Filing No. 12 at 11.] The Court finds this distinction inconsequential. The Seventh Circuit in *Varga* held that the ALJ was required to address all of the claimant's difficulties supported by the record in the RFC and in the hypothetical questions to the VE. 794 F.3d at 814. The holding in *Varga* was not limited to situations where the ALJ did not address the Section I checkboxes.

---

[5] The Commissioner argues that, like the claimant in *Jozefyk*, Sandy C. has not "identified any specific, supported limits on mental functioning that were unreasonably omitted from the ALJ's decision." [Filing No. 12 at 10.] To the contrary, Sandy C. argues specifically that Dr. Doup's finding that she "may have difficulty attending, concentrating, and completing simple tasks due to depressive and anxious difficulties" is not accounted for in the RFC.

14

Finally, the cases the Commissioner relies upon do not support his argument that the RFC sufficiently accounted for Sandy C.'s limitations. The Commissioner argues that *Parrott v. Astrue*, 493 Fed. App'x 801 (7th Cir. 2012), supports the ALJ's RFC in this case. There, the Seventh Circuit found, without discussion, that when the ALJ asked the VE to assume that the claimant could not perform complex tasks, he took into account the claimant's "concentration and pace limitation." *Id.* at 805. Here, the Court finds *Varga* and *O'Connor-Spinner* – both published decisions pre-dating *Parrott*, but relied upon in numerous cases decided after *Parrott* – more instructive.

In another case relied upon by the Commissioner, *Seamon v. Astrue*, 364 Fed. App'x 243 (7th Cir. 2010), the Seventh Circuit found that a limitation in social functioning was sufficiently addressed by restricting the claimant to "brief and superficial contact with the public," and a limitation in concentration, persistence, or pace was sufficiently addressed by a restriction of "no high production goals." *Id.* at 248. Significantly, *Seamon* was decided before *Varga* and *O'Connor-Spinner*. Additionally, the court in *Seamon* found that other evidence in the record outweighed evidence the claimant relied upon from a non-treating physician, which was "based on a limited examination and review of [the claimant's] medical history" and "deserve[d] little weight." *Id.* Here, the Commissioner does not contest the validity of the evidence supporting Sandy C.'s limitations in concentration, persistence, or pace.

The Court finds that the ALJ erred by failing to account for Sandy C.'s moderate difficulties with concentration, persistence, or pace in his hypothetical questions to the VE, and in Sandy C.'s RFC. This error also requires remand.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the portion of the ALJ's decision denying Sandy C. benefits from the date of her application (January 22, 2015) to her 55th birthday (March 7, 2019), and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) (sentence four).  On remand, for the period from Sandy C.'s application date (January 22, 2015) to Sandy C.'s 55th birthday (March 7, 2019), the ALJ must adequately account for Dr. Doup's findings and for Sandy C.'s moderate difficulties with concentration, persistence, or pace in both the hypothetical questions to the VE and in Sandy C.'s RFC.  The Court **AFFIRMS** the portion of the ALJ's decision finding that Sandy C. is disabled as of her 55th birthday (March 7, 2019).

Date: 8/7/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**